UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Citribel N.V., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, | Court No. 24-00010 |

# COMPLAINT

Plaintiff Citribel N.V. ("Plaintiff" or "Citribel"), by and through their attorneys, allege and state:

## ADMINISTRATIVE DETERMINATION CONTESTED

1. This action is an appeal from the final results issued by the United States Department of Commerce (the "Department" or "Commerce") in the administrative review of the antidumping order on *Citric Acid and Certain Citrate Salts From Belgium* (the "AD Order"). The contested final results cover entries of subject merchandise from Belgium during the period of review ("POR") from July 1, 2021, through June 30, 2022.

2. Commerce published its contested final results in the Federal Register on December 29, 2023. *See Citric Acid and Certain Citrate Salts From Belgium: Final Results of Antidumping Duty Administrative Review; 2021-2022*; 88 Fed. Reg. 90,167 (December 29, 2023) (the "Final Results").

3. Commerce's final determinations, findings, and conclusions are set out primarily in the issues and decision memorandum for the Final Results. *See Issues and Decision*

1

*Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Citric Acid and Certain Citrate Salts from Belgium; 2021-2022* (December 22, 2023) ("Final IDM").

## JURISDICTION

4. Plaintiff Citribel brings this action pursuant to Section 516A(a)(2) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2). Citribel contests the Department's Final Results generally and specifically as applied to Citribel. This Court has jurisdiction under 28 U.S.C. § 1581(c).

## STANDING

5. Plaintiff Citribel is a Belgian producer and exporter of citric acid and therefore an interested party under Sections 516A(f)(3) and 771(9) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9) respectively. Citribel was also a party to the administrative proceeding from which this matter arises. Citribel thus has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6. Plaintiff filed a Summons with this Court on January 12, 2024, within 30 days from the date of publication of the Final Results. Plaintiff's Complaint is timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A) and Rule 3 of the Rules of this Court, which requires that the Complaint be filed within 30 days of the Summons.

## STANDARD OF REVIEW

7. The Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record as a whole, or is otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B).

**STATEMENT OF FACTS**

8.       Paragraphs 1 through 7 are realleged and incorporated herein.

9.       On September 6, 2022, Commerce initiated the administrative review of the AD Order covering entries made from July 1, 2021, through June 30, 2022 (the "POR"). *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463 (September 6, 2022).

10.      On September 15, 2022, Commerce issued its initial questionnaire to Citribel. The initial questionnaire defined the cost of manufacturing ("COM") as "the cost of materials, labor, variable overhead, and fixed overhead incurred to produce the finished goods during the POR." *See* Initial Questionnaire, at D-12.

11.      On October 31, 2022, Citribel submitted its response to Sections B-C of the Department's initial questionnaire.[1] The home market and U.S. sales reported in the Sections B-C response indicated that the price of the subject merchandise increased drastically during the POR. *See* BCQR, at Exhibits B-1 & C-1.

12.      On November 7, 2022, Citribel submitted its response to Section D of the Department's initial questionnaire.[2] In that response, Citribel explained that both its COM and price for citric acid changed drastically during the POR. Accordingly, Citribel reported its COM on a quarterly basis. *See* DQR, at 1, 2 & Exhibit D-1. Citribel's quarterly COM consisted of: (1) quarterly raw material costs, and (2) quarterly conversion costs (i.e., labor, variable overhead, and fixed overhead).

---

[1] *See* Citribel's Sections B-C Questionnaire Response (October 31, 2022) ("BCQR").
[2] *See* Citribel's Section D Questionnaire Response (November 7, 2022) ("DQR").

3

13. In its Section D response, Citribel also provided an analysis demonstrating: (1) that the change in its COM is at least 25 percent between the low-COM quarter and the high-COM quarter, and (2) that there is a reasonably positive correlation between its COM and prices. *See id.* at Exhibits D-17.1 and D-17.2. These are the two requirements for the Department to apply its quarterly cost methodology. *See e.g., Emulsion Styrene-Butadiene Rubber From Brazil: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 30,589 (June 9, 2021), and accompanying Issues and Decision Memorandum (June 3, 2021) ("*ESBR from Brazil*"), at Comment 1.

14. On December 2, 2022, Commerce issued a supplemental Section D questionnaire, instructing Citribel to report its "quarterly" COM using ***annualized*** conversion costs. *See* Supp. Sec D QR, at 5. This was contrary to the definition of "cost of manufacturing" in the initial questionnaire, which included both the raw material costs and the conversion costs.

15. On December 12, 2022, Citribel responded to the supplemental Section D questionnaire[3] by submitting its revised "quarterly" COM consisting of: (1) quarterly raw material costs, and (2) annualized conversion costs. Also, pursuant to Commerce's instructions, Citribel submitted a revised analysis showing that its revised "quarterly" COM increased by 9-14 % between the low-COM quarter and the high-COM quarter. *See* SDQR, at Exhibit SD-6 & SD-13

16. In its supplemental Section D response, Citribel also explained that it has experienced a significant increase in its conversion costs due to the macroeconomic conditions caused by the economic recovery from the Covid-19 pandemic and the Russian invasion of Ukraine. Citribel provided supporting information including the EU inflation data, energy prices, and labor cost indices. *See* SDQR, at 2-5, Exhibit SD-1.1 through SD-5.2.

17. On February 22, 2023, Citribel submitted its second supplemental Section D response and provided updated cost data based on its quarterly income statements.[4] In this submission, Citribel iterated that its conversion costs increased sharply during the POR because of inflationary economic conditions (and not because those expenses were recorded at different rates requiring normalization). Citribel further argued that disregarding the actual changes in the conversion costs through annualization would result in a serious distortion in Commerce's margin calculations. *See* SDQR, at 1-3.

18. On July 31, 2023, Commerce issued the preliminary results of the administrative review. *See Citric Acid and Certain Citrate Salts From Belgium: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 49,442 (July 31, 2023) (the "Prelim Results") and accompanying Issues and Decision Memorandum dated July 24, 2023 ("Prelim IDM") and Analysis Memorandum dated July 24, 2023 ("Prelim Analysis Memo").

19. In the Prelim Results, Commerce determined that its quarterly cost methodology was not warranted for Citribel because the percentage difference between the low-COM quarter and the high-COM quarter did not exceed 25 percent. *See* Prelim IDM, at 12; *see also* Prelim Analysis Memo, at 2. To support this finding, Commerce claimed that it "analyzed the effect of these {conversion} cost increases had on total COM for the subject merchandise." *Id.* However, Commerce's "analysis" was based on Citribel's annualized conversion costs, which by definition could not reflect any cost changes. *See id.* at Attachment 7.

20. On August 30, 2023, Citribel submitted its case brief contesting Commerce's decision to reject the quarterly cost methodology. In the case brief, Citribel demonstrated again

---

[3] *See* Citribel's Supplemental Section D Questionnaire Response (December 12, 2022) ("SDQR").

5

that its COM changed by more than 25% during the POR.  Citribel also demonstrated that Commerce failed to analyze the effect of changing conversion costs by only examining annualized conversions costs.  Citribel also argued that Commerce should conduct its price comparisons within the same quarter regardless of its decision on the use of quarterly costs.  *See generally* Pl. Admin. Br.

21. On December 29, 2023, Commerce issued its final results of the administrative review.  *See Citric Acid and Certain Citrate Salts From Belgium: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 90,167 (December 29, 2023) (the "Final Results"), and accompanying Issues and Decision Memorandum dated December 22, 2023 ("Final IDM).

22. In the Final Results, Commerce again determined that its quarterly cost methodology was not warranted.  *See* Final IDM, at Comment 1.  Commerce reasoned that conversion costs "may be recorded at different rates from month to month throughout a given year" and therefore "using an annual average for these costs normalizes these costs over the entire year." *Id.* at 9.  Commerce further reasoned that the practice of using annualized conversion costs in its quarterly cost analysis is the "type of line-drawing exercise" left to Commerce's discretion.  *Id.* at 11.  However, Commerce did not explain how it could use Citribel's annualized conversions costs to "analyze" the effect of changing conversion costs on the company's COM.  Commerce also refused to match sales in the same quarter and asserted that "Citribel failed to demonstrate that the 90/60 rule led to a distortive or unreasonable result."

---

[4] *See* Citribel's Second Supplemental Sections A-D Questionnaire Response (February 22, 2023)

## COUNT I

23.     Paragraphs 1 through 22 are realleged and incorporated herein.

24.     In the Final Results, Commerce unlawfully determined that its quarterly cost mythology was not warranted because Citribel's quarterly COM did not change by more than 25%. Commerce's decision was unsupported by substantial evidence.

25.     Commerce's initial questionnaire expressly stated that COM is defined "as the cost of materials, labor, variable overhead, and fixed overhead incurred to produce the finished goods during the POR." *See* Initial Questionnaire, at D-12. For Citribel, raw material costs make up approximately half of its total COM, and the remaining half consists of labor and overheads (i.e., conversion costs).

26.     Citribel's initial analysis based on its quarterly raw material costs and quarterly conversion costs was accurate and consistent with Commerce's instructions in the initial questionnaire. The analysis demonstrated that Citribel's quarterly COM (as defined by Commerce) changed by more than 25% between the low-COM quarter and the high-COM quarter.

27.     "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Siemens Energy, Inc. v. United States*, 806 F.3d 1367, 1369 (Fed. Cir. 2015) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) ("*Universal Camera*"). Given the clear definition of COM in the initial questionnaire,

---

("2SADQR").

7

Commerce's decision to reject Citribel's analysis based on its quarterly conversion costs is unsupported by substantial evidence.

28. Therefore, Commerce's decision to reject Citribel's initial analysis and rely on its revised analysis based on the annualized conversion costs was unsupported by substantial evidence and not in accordance with law.

## COUNT II

29. Paragraphs 1 through 28 are realleged and incorporated herein.

30. As noted above, Commerce's initial questionnaire expressly stated that COM is defined "as the cost of materials, labor, variable overhead, and fixed overhead incurred to produce the finished goods during the POR." *See* Initial Questionnaire, at D-12.

31. Despite the clear definition of COM, Commerce arbitrarily and capriciously instructed Citribel to resubmit its quarterly cost analysis "by calculating conversion costs (*e.g.*, DIRLAB, VOH, and FOH) on an annualized basis." *See* SDQR, at 1.  By doing this, Commerce specifically instructed Citribel to disregard changes in its conversion costs, which comprise half of its total COM.

32. In prior cases, Commerce has articulated that quarterly cost averaging is appropriate in situations where a reliance on the normal cost averaging over the entire POR would be distortive due to significant cost and price changes. *See e.g.*, *ESBR from Brazil*, at Comment 1.  During the underlying review, Citribel clearly demonstrated that is COM and prices for citric acid increased sharply during the POR.

33. "An agency acts arbitrarily, and therefore unreasonably, when it 'entirely fail{s} to consider an important aspect of the problem' or 'offer{s} an explanation for its decision that runs

8

counter to the evidence before {it}." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 70 F. Supp. 3d 1328, 1335, n.33 (Ct. Int'l Trade 2015) (citing *Motor Vehicle Mfrs. Ass'n*, 463 U.S. 29).

34. In the Prelim Results, Commerce recognized that Citribel experienced significant changes in labor, variable and overhead costs. Commerce also claimed that it analyzed the effect of these cost increases on Citribel's total COM for the subject merchandise. However, Commerce's "analysis" was based on Citribel's annualized conversions costs, which *by definition could not reflect any cost changes related to conversion costs* during the POR. This runs counter to the purpose of conducting a quarterly COM analysis. The fundamental flaw in the methodology used by Commerce cannot be considered the "type of line-drawing exercise" left to the agency.

35. Therefore, Commerce's decision to conduct a quarterly COM analysis using Citribel's annualized conversion costs was arbitrary, capricious, and not in accordance with law.

## COUNT III

36. Paragraphs 1 through 35 are realleged and incorporated herein.

37. Commerce must determine dumping margins as accurately as possible. *See Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,* 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."). In the underlying review, Commerce created a serious distortion in its margin calculations by comparing sales made in different quarters despite the record evidence showing significant cost and price changes during the POR.

9

38. 19 C.F.R. § 351.414(f) provides that, in selecting the contemporaneous month for price comparisons, Commerce will "normally" select a month during the six-month window before and after the month in which the particular U.S. sales under consideration were made (i.e., the "90/60 Rule"). However, the use of 90/60 rule can result in a serious distortion in margin calculations when the costs and prices are changing significantly. *See e.g., Garofalo v. the United States*, 783 F. Supp. 2d 1230 (Ct. Int'l Trade 2011) ("to lessen the margin distortions caused by changes in sales price which result from significantly changing costs{,} . . . it is appropriate to compare U.S. sales with contemporaneous {normal values} which were made in the ordinary course of trade as established in the sales-below-cost test.").

39. The underlying rationale for using a shorter comparison window is to avoid distortion associated with significant changes in prices which are reflective of their contemporaneous costs. In this case, Citribel demonstrated that both its prices and costs for citric acid changed sharply during the POR, necessitating the use of a shorter comparison window. However, Commerce found that "Citribel failed to demonstrate that the 90/60 rule led to a distortive or unreasonable result." *See* Final IDM, at 15. "An agency acts arbitrarily, and therefore unreasonably, when it 'entirely fail{s} to consider an important aspect of the problem' or 'offer{s} an explanation for its decision that runs counter to the evidence before {it}." *See Ad Hoc Shrimp Trade Action Comm.*, 70 F. Supp. 3d 1328, 1335, n.33 (Ct. Int'l Trade 2015).

40. Therefore, Commerce's decision to use the standard comparison window was unsupported by substantial evidence, arbitrary and capricious, and otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in favor of Plaintiff, declare that Commerce erred in the final results in the subject administrative review as alleged herein, and remand to the Department with instructions to publish new final results in conformity with the opinion of this Court.  Specifically, the Plaintiff prays that this Court remand Commerce to determine based on the record evidence that the quarterly cost quarterly cost methodology is warranted in the subject administrative review and/or recalculate the dumping margin using a shorter price comparison window.  Plaintiff otherwise requests that the Court grant such additional relief as the Court may deem just and proper.

                                                          Respectfully submitted,

                                                          */s/ Pierce Lee*
                                                          Daniel Cannistra, Esq.
                                                          Pierce Lee, Esq.

                                                          Crowell & Moring
                                                          1001 Pennsylvania Ave., N.W.
                                                          Washington, D.C.  20004

                                                          *Counsel for Plaintiff Citribel N.V.*

Dated: February 9, 2024

**CERTIFICATE OF SERVICE**

   Pursuant to Rule 3(f) of the Court of International Trade, I, Pierce Lee, hereby certify that I have caused copies of the Complaint, in Citribel N.V. v. United States, Case No. 24-00010, be served upon the parties in the administrative proceeding, by the U.S. certified mail, return receipt requested on February 9, 2024.

**UPON THE UNITED STATES:**

Ravi Dhananjayen Soopramanien
U.S. Department of Justice
Civil Division, National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**UPON THE DEPARTMENT OF COMMERCE:**

Robert Heilferty, Esq.
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance International Trade Administration
U.S. Department of Commerce
14th Street and Constitution Ave., NW
Washington, DC 20230

**Other Interested Parties**

Stephen P. Vaughn, Esq.
Representative of Archer Daniels Midland Company, Cargill, Incorporated, and Primary Products Ingredients Americas LLC
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4706
Phone: 202-737-0500
Email: svaughn@kslaw.com

                /s/ *Pierce Lee*
                 Pierce Lee