# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

CITRIBEL NV,

        *Plaintiff,*

    v.

UNITED STATES,

        *Defendant,*

        and

ARCHER DANIELS MIDLAND
COMPANY, CARGILL, INCORPORATED,
AND PRIMARY PRODUCTS
INGREDIENTS AMERICAS LLC,

        *Defendant-Intervenors.*

Court No. 24-00010

**PUBLIC VERSION**

---

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF RULE 56. 2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel J. Cannistra
Pierce J. Lee
Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 624-2902
Email: dcannistra@crowell.com

*Counsel for Plaintiff Citribel N.V.*

December 6, 2024

# **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ....................................................................1

ARGUMENT ..........................................................................................3

I.    Commerce Failed to Answer Fundamental Questions ...................3

    1.   Did Commerce conduct an analysis of the effect of Citribel's conversion cost increases? ..................................................3

    2.   Was the increase in Citribel's conversions costs "real?" ....................4

    3.   Should Citribel's natural gas costs be treated differently from its molasse costs? ...................................................5

II.   Citribel Demonstrated That Commerce's Cost Methodology Leads to a Distortive and Unreasonable Result ...........................................10

III.  *Habas Sinai* Should Be Distinguished ........................................12

IV.  Citribel's Argument Is Based on Its Cost Experience, Not Inflation ...........14

V.   Citribel Did Not Waive Any Argument or Failed to Exhaust Its Administrative Remedies ...............................................................15

    1.   Citribel did not waive any argument about statutory interpretation ....................................................................15

    2.   Citribel did not waive any argument about Commerce's failure to explain its methodology prior to the Final Results .......................17

    3.   Citribel did not exhaust administrative remedies regarding any argument for departure from established practice ...............................18

CONCLUSION .....................................................................................19

CERTIFICATE OF COMPLIANCE ........................................................21

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  Slip Op. 15-53, Court No. 13-00346, at 14 (Ct. Int'l Trade Jun. 5
  2015) ..................................................................................................16

*Alloy Piping Products, Inc. v. United States*,
  Slip Op. 09-29, Consol. Court No. 08-00027, at 23 (Ct. Int'l Trade
  Apr. 14, 2009) .....................................................................................10

*Habas Sinai ve Tibbi Gazlar lstihsal Endustrisi A.S. v. United States*,
  Slip Op. 19-10, Consol. Court No. 17-00204 (Ct. Int'l Trade Jan.
  23, 2019) ..........................................................................................6, 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
  463 U.S. 29 (1983) ..............................................................................10

*Shandong Huarong General Corp. v. United States*,
  Slip Op. 01-88, Consol. Court No. 00-08-00393, at 7-8 (Ct. Int'l
  Trade Jul. 23, 2001) ............................................................................20

*Taian Ziyang Food Co., Ltd. v. United States*,
  Slip Op. 11-88, Consol. Court No. 05-00399, at 38-39 n.22 (Ct.
  Int'l Trade Jul. 22, 2011) ....................................................................13

*Timken United States Corp. v. United States*,
  421 F.3d 1350 (Fed. Cir. 2005) .............................................................7

*Viraj Forgings, Ltd v. United States*,
  Slip Op. 04-158, Court No. 01-00889 (Ct. Int'l Trade Dec. 9, 2004) ..........10, 12

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)...................................................................10

19 U.S.C. § 1677b(b)(1) ......................................................................17, 20

19 U.S.C. § 1677b(b)(3) ..................................................................17, 19, 20

**Other Authorities**

*Steel Concrete Reinforcing Bar From the Republic of Turkey:*
  *Preliminary Results of Antidumping Duty Administrative Review*;
  2021-2022, 88 Fed. Reg. 50,100 (August 1, 2023), and associated
  Issues and Decision Memorandum (July 26, 2023) ...........................15

Plaintiff Citribel NV ("Plaintiff" or "Citribel") hereby submits this reply brief in support of Rule 56.2 motion for judgement on the agency record contesting the Department of Commerce's ("Commerce's" or the "Department's") decision not to use its quarterly cost methodology in the administrative review of the antidumping duty order on *Citric Acid and Certain Citrate Salts from Belgium* covering the period of review from July 1, 2021 through June 30, 2022 (the "POR").

## SUMMARY OF ARGUMENT

In the underlying proceeding, Commerce failed to address several fundamental questions necessary for judicial review: (1) Did Commerce conduct an analysis of Citribel's conversion cost increases, (2) Did the change in Citribel's conversion costs represent an ***actual*** increase rather than distortive fluctuations? (3) Should Commerce treat Citribel's conversion costs differently from its raw material costs? The Court should remand the case to Commerce to answer these questions.

The Defendant and Defendant-Intervenors iterate Commerce's assertion that the fact that an alternative methodology would have achieved a different result is insufficient to suggest that the standard methodology is unreasonable. However, Citribel has consistently demonstrated that that Commerce's cost methodology produces a distortive and unreasonable result, not just a different one.

1

This Court should distinguish *Habas Sinai ve Tibbi Gazlar lstihsal Endustrisi A.S. v. United States,* Slip Op. 19-10, Consol. Court No. 17-00204 (Ct. Int'l Trade Jan. 23, 2019). *Habas Sinai* concerns the denominator in Commerce's 25% equation for determining significant cost changes, while this case focuses on the numerators. Citribel agrees that the denominator should include all components of the cost of manufacturing ("COM") but argues that the numerators should likewise reflect all changes to the COM, including conversion costs. The Court in *Habas Sinai* did not consider this issue.

The Defendant-Intervenors assert that Citribel contended generally that the company experienced high inflation and Commerce has developed a separate adjustment applied in "high inflation" cases. However, Citribel's argument specifically concerns its cost experience, not inflation.

Lastly, Citribel did not waive any argument or fail to exhaust its administrative remedies. Citribel did not waive its argument about statutory interpretation. Citribel has consistently argued that Commerce's use of annual conversion costs conflicts with its definition of the cost of manufacturing. A mere reference to statutory language does not constitute a waiver of this argument. Citribel did not waive its argument regarding Commerce's failure to explain its methodology. Citribel's reliance on prior cases, in light of Commerce's silence,

cannot be considered a waiver. Citribel did not exhaust its administrative remedies regarding any argument for departure from established practice. The Defendant-Intervenors suggest that Citribel seeks a change in Commerce's policy, but Citribel's demonstration of the flaws in Commerce's methodology does not constitute such a request. As stated in its case brief, Citribel challenges Commerce's "cookie-cutter" use of its methodology, not the methodology itself.

## **ARGUMENT**

### I.    **Commerce Failed to Answer Fundamental Questions**

Commerce's explanation must be adequately detailed to permit judicial review. *See Timken United States Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005). In the underlying proceeding, Commerce failed to address several fundamental questions, answers to which are necessary for this Court to examine the reasonableness of Commerce's decisions. Therefore, the Court should remand this case to Commerce to provide additional explanations.

### 1.    **Did Commerce conduct an analysis of the effect of Citribel's conversion cost increases?**

In the Preliminary Results, Commerce asserted that it ***analyzed*** the effect of Citribel's conversion cost increases (i.e., DIRLAB, VOH, and FOH) on the total COM:

> Record evidence shows that Citribel experienced significant changes in the total cost of manufacturing (COM) during the POR and that the

3

> change in COM (DIRLAB, VOH and FOH) is primarily attributable
> to the price increases of energy and inflation. Commerce analyzed ***the
> effect these cost increases had on total COM*** for the subject
> merchandise, between the quarter with the highest COM and the
> quarter with the lowest COM divided by the lowest quarter COM,
> using all of the CONNUMs sold in the home and U.S. markets.

Prelim Analysis Memo, at 2 (footnote omitted; emphasis added). Appx1021.

Despite this statement, the record does not support that Commerce has conducted

this analysis.

Citribel raised this issue in its administrative case brief[1], and Commerce did

not address it. Citribel raised this issue again in its case brief for this court

proceeding[2], and the Defendant did not address it. The Defendant-Interventors

remained silent on this issue. So, did Commerce conduct this analysis or not? How

was the analysis conducted and what was the outcome? Commerce must answer

these questions.

### 2.  Was the increase in Citribel's conversions costs "real?"

In the Preliminary Results, Commerce stated that Citribel "experienced

significant changes in the total cost of manufacturing (COM) during the POR and

that the change in COM (DIRLAB, VOH and FOH) is primarily attributable to the

---

[1] *See* Citribel's Admin. Case Br. at 6. Appx4231.
[2] *See* Citribel's Case Br. at 23.

4

price increases of energy and inflation." *Id.* Thus, Commerce acknowledged that Citribel experienced a significant change in its conversion costs.

However, Commerce suggests that the increase in Citribel's conversions costs is not "real." In the Final Results, Commerce states that conversion costs are "normally incurred erratically" and "may be recorded at different rates from month to month." *See* Final IDM, at 9–10. Appx1287- Appx1288. This statement suggests that the change in Citribel's conversion costs may not represent actual cost increases but instead reflect distortions requiring normalization.

The ambiguity makes it difficult to discern the rationale behind Commerce's decision to use the annual conversion cost in the underlying proceeding. It is unclear whether Commerce's decision was based on a finding that Citribel's conversion costs did not actually change (and thus did not affect its COM) or whether other considerations outweighed the impact of the change in in conversion costs. Commerce must resolve this ambiguity.

### 3. Should Citribel's natural gas costs be treated differently from its molasse costs?

In the underlying proceeding, Citribel asked Commerce whether its conversion costs should be treated differently from its raw material costs for the

purpose of Commerce's cost analysis.[3] Citribel provided factual evidence

demonstrating that they should be treated in the same manner.[4] However,

Commerce failed to evaluate the evidence or address the question presented.

Instead, Commerce simply adopted a conclusory statement that it considers the

annual conversion cost to "better reflect" a normalized cost to use in it dumping

analysis. *See* Final IDM, at 10. Appx1288.

An agency's finding is unlawful if it is unsupported by substantial evidence.

*See* 19 U.S.C. § 1516a(b)(1)(B)(i). A finding based on substantial evidence

requires a rational connection between the facts accepted and the determination

made. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co*., 463 U.S.

29, 43 (1983). A conclusory statement does not demonstrate such a rational

connection. *See Alloy Piping Products, Inc. v. United States*, Slip Op. 09-29,

Consol. Court No. 08-00027, at 23 (Ct. Int'l Trade Apr. 14, 2009) (citing

*Matsushita Elec. Indus. Co., Ltd. v. United States*, 750 F.2d 927, 933 (Fed. Cir.

1984). "Conclusory is defined as "{e}xpressing a factual inference without stating

the underlying facts on which the inference is based." *Viraj Forgings, Ltd v.*

---

[3] *See* Citribel's Admin. Case Br. at 5-10. Appx4230-Appx4235.
[4] *See* Pl. Br. at 26-27.

*United States*, Slip Op. 04-158, Court No. 01-00889, at 20 n.12 (Ct. Int'l Trade Dec. 9, 2004) (citing Black's Law Dictionary 308 (8th ed. 2004)).

Commerce's determination regarding the appropriate averaging period for Citribel's conversion costs is based on several gross generalizations. In its case brief, Citribel referred to these as "presumptions."[5] The Defendant characterizes them as "rationale,"[6] while the Defendant-Intervenors describe them as "policy."[7] Regardless of the terminology, these generalizations were not applicable to Citribel during the POR.

For instance, Commerce asserts that conversion costs are "normally incurred erratically." *See* Final IDM, at 9. Appx1287. However, the record shows that at least two conversion costs are not incurred erratically for Citribel. The costs of natural gas and electricity are directly tied to the production quantity of citric acid and therefore do not fluctuate unpredictably. Each pound of citric acid requires a fixed amount of steam, which is generated using natural gas and electricity. *See* DQR, at Exhibit D-14.2 (Appx1844- Appx1845); *see also* 2SDQR, at 2SD-15 (Appx2020).  Thus, these costs are directly tied to citric acid production, just like the raw materials used in its production.

---

[5] *See* Pl. Br. at 14.
[6] *See* Def. Br. at 27.
[7] *See* Intvrs. Br. at 8-11.

Commerce also states that "while significant changes in direct material costs are unexpected and may trigger a more rapid price change response, for conversion costs, it is **normal** for conversion costs to be incurred sporadically throughout the year." Final IDM, at 9-10 (emphasis added). Appx1287-Appx1288. However, the increase in Citribel's energy costs (i.e., natural gas and electricity) during the POR was far from normal. The primary drivers of this increase were the Russian invasion of Ukraine and the post-pandemic recovery[8] – extraordinary circumstances that are anything but normal.  Due to these unforeseen events, the price of natural gas paid by Citribel increased from EUR [      ] per MWh in July 2021 to EUR [        ] per MWh in March 2022.  *See* 3SADQR (April 5, 2023), at 7. Appx2467. Similarly, the price of electricity paid by Citribel increased from EUR [      ] per MWh in August 2021 to EUR [        ] per MWh in December 2021. *Id.* at 8. Appx2468.  Such drastic changes cannot reasonably be characterized as normal for this type of cost.

Moreover, it is inconceivable that the increase in Citribel's conversion costs did not trigger a rapid price response. Natural gas is one of the three most significant inputs for citric acid production, along with molasses and lime.[9]

---

[8] *See* SDQR, at 2-5. Appx1890-Appx1893.
[9] *See* DQR, at D-7. Appx1699.

Electricity is also one of the significant inputs.[10] Their consumption is directly tied to citric acid production. The record demonstrates that Citribel adjusted its prices in response to changes in these costs each quarter. A comparison of Citribel's quarterly costs (calculated using quarterly conversion costs) and quarterly prices reveals a strong correlation. *See* DQR, at Exhibit 17.1. Appx1852-Appx1854. Furthermore, Citribel's quarterly income statements confirm that the company remained profitable in each quarter during the POR. *See* 2SDQR, at Exhibit 2SD-5. Appx2328-Appx2338

The rule of law requires Commerce to ensure that each issue in every case is decided based on the specific facts on the record. *See Taian Ziyang Food Co., Ltd. v. United States*, Slip Op. 11-88, Consol. Court No. 05-00399, at 38-39 n.22 (Ct. Int'l Trade Jul. 22, 2011). "'Cut-and-paste' decisionmaking and 'cookie cutter' justice are not permissible." *Id.*

Commerce's cost methodology assumes that all companies have similar cost experiences with respect to conversion costs. However, the factual evidence demonstrates that Citribel's cost experience during the POR differed. If the assumption underlying Commerce's methodology does not hold true, shouldn't Commerce adjust its methodology? Commerce must answer this question.

---

[10] *See* DQR, at Exhibit D-4. Appx1770.

## II.    Citribel Demonstrated That Commerce's Cost Methodology Leads to a Distortive and Unreasonable Result

In the Final Results, Commerce asserts that the fact that an alternative methodology would have achieved a different result is insufficient to suggest that the standard methodology is unreasonable. *See* Final IDM, at 10. The Defendant and Defendant-Intervenors reiterate this point in the current proceeding.[11]

However, Citribel has never based its argument solely on the potential for a different result. Citribel has consistently argued that that Commerce's cost methodology produces a distortive and unreasonable result.

In the underlying proceeding, Citribel demonstrated that Commerce's standard practice is deficient and flawed for the following reasons:

1. During the period of review, Citribel experienced an ***actual*** increase in its conversion costs, that cannot be characterized as distortive fluctuations.

2. Citribel's pricing decisions in the earlier quarters of the POR reflect the costs incurred in those quarters, not the average annual costs, which were not even known to Citribel at the time.

---

[11] *See* Def. Br. at 15; *see also* Intvrs. Br. at 5.

3.  If Commerce uses Citribel's average annual costs, nearly all Citribel's home market sales in the earlier quarters are considered "below-cost" sales, even though they were made at prices above the actual costs incurred at the time.

*See* Citribel's Admin. Br. at 6-7, 9, 13-14. Appx4231-Appx4232, Appx4234, Appx4238-Appx4239.

Commerce's standard methodology disregards Citribel's commercial reality and overstates the dumping margin *due solely* to increases in the prices of certain inputs used to produce citric acid. Commerce has previously characterized the overstatement of dumping margins "due solely" to inflation as "distortive."[12] Similarly, overstating a dumping margin due solely to a respondent's cost experience should also be considered distortive and, therefore, unreasonable.

In the Final Results, Commerce states that its quarterly cost methodology is not warranted because Citribel "has not shown how the established standard methodology is deficient or flawed." Final IDM, at 10. Appx1288. As explained above, this statement contradicts the record. An agency acts arbitrarily – and

---

[12] *See e.g., Steel Concrete Reinforcing Bar From the Republic of Turkey: Preliminary Results of Antidumping Duty Administrative Review*; 2021-2022, 88 Fed. Reg. 50,100 (August 1, 2023), and associated Issues and Decision Memorandum (July 26, 2023), at 19.

therefore unreasonably – when it "offer{s} an explanation for its decision that runs counter to the evidence before {it}." *Ad Hoc Shrimp Trade Action Comm. v. United States*, Slip Op. 15-53, Court No. 13-00346, at 14 (Ct. Int'l Trade Jun. 5 2015)(citing *Motor Vehicle Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)).

## III.    *Habas Sinai* Should Be Distinguished

In its response brief, the Defendant-Intervenors claim that "{t}his Court has previously rejected arguments similar to those now being advanced by Citribel" and cites *Habas Sinai ve Tibbi Gazlar lstihsal Endustrisi A.S. v. United States,* Slip Op. 19-10, Consol. Court No. 17-00204 (Ct. Int'l Trade Jan. 23, 2019). This statement is inaccurate.

Citribel's claims are different from those in *Habas Sinai*. In that case, plaintiff Habas requested that Commerce conduct its quarterly cost test using ***only*** changes in raw material costs. *See Habas Sinai*, at 17-18. In the underlying case, Citribel requested that Commerce conduct its quarterly cost test using ***all*** changes in the total cost of manufacturing ("COM"), including those in conversion costs. These are fundamentally different arguments.

*Habas Sinai* concerns the denominator in Commerce's 25% equation for determining significant cost changes. Habas argued that including conversion costs

12

in the denominator improperly diluted the percentage change of its raw material costs. *Id.* at 20. The Court rejected this argument, concluding that Commerce's approach was reasonable given its explanation that the "test examines, in the first instance, the total cost of manufacture because 'it accounts for all production costs, the total of which impact pricing.'" *Id.* at 21-22.

In contrast, the present case focuses on the numerators in Commerce's 25% equation. Citribel agrees with the Court's decision in *Habas Sinai* that the denominator should include both raw material and conversion costs. However, Citribel argues that the numerators should likewise reflect all changes to the COM, including conversion costs. Citribel emphasized this point in its case brief:

> The statute provides that Commerce's cost test must be based on the cost of production, which is defined as the sum of the raw material costs, conversion costs (i.e., "fabrication or other processing of any kind employed in producing the foreign like product"), and other expenses. *See* 19 U.S.C. § 1677b(b)(1) & (3). Therefore, Commerce's test for determining a significant cost change must also be based on the change in the total cost, not just raw material costs.

Pl. Case Br. at 18-19. The Court in *Habas Sinai* did not address this issue.

The Court in *Habas Sinai* briefly addressed an issue related to Commerce's use of annual conversion costs. In *Habas Sinai*, the plaintiff argued that Commerce's addition of annual conversion costs "'intrinsically dilutes any {T}COM fluctuations,' particularly for products with a low DIRMAT-to-TCOM ratio." *Id.* at 20. The Court acknowledged the disparity between respondents with

13

differing DIRMAT-to-TCOM ratios, stating that "{t}his is not arbitrary, but instead reflects 'each producer's actual overall cost experience.'" *Id.*, at 22.

However, the Court in *Habas Sinai* did not specifically address the diluting effect of using annual conversion costs in the numerators of Commerce's 25% equation. Nor did it consider scenarios where averaging conversion costs eliminates actual cost changes rather than merely normalizing distortive fluctuations. Accordingly, *Habas Sinai* does not support the position that Commerce's use of annual conversion cost is reasonable in all situations.

## IV.    Citribel's Argument Is Based on Its Cost Experience, Not Inflation

The Defendant-Intervenors assert that Citribel contended generally that the company experienced high inflation and "Commerce has developed a separate adjustment applied in 'high inflation' cases." Intvrs. Br. at 11. However, these statements miss the point. Citribel's argument specifically concerns its cost experience, not inflation.

Citribel recognizes that inflation and cost experience are distinct considerations, though the former can influence the latter. Inflation was cited as one piece of evidence to demonstrate that the changes in Citribel's conversion costs were actual increases driven by rising input prices, rather than the erratic nature of those costs.

While inflation itself is not a factor in Commerce's quarterly cost methodology, a respondent's cost experience resulting from inflation is. In the underlying proceeding, Citribel demonstrated that its total COM increased by more than 25% due to inflation's impact on the major inputs used in citric acid production. These inputs include both raw materials and other factors of production, such as natural gas and electricity, required to convert raw materials into citric acid. All these inputs form part of the production cost that the statute mandates Commerce to consider in its cost test. *See* 19 U.S.C. § 1677b(b)(3) ("the cost of production shall be an amount equal to the sum of—(A)the cost of materials and of ***fabrication or other processing*** of any kind employed in producing the foreign like product {…}.) (emphasis added). Therefore, Commerce must evaluate the impact of changes in "fabrication and processing" costs on Citribel's total COM.

## V.    Citribel Did Not Waive Any Argument or Failed to Exhaust Its Administrative Remedies

### 1.    Citribel did not waive any argument about statutory interpretation

In its case brief, Citribel argued that Commerce's failure to account for changes in conversion costs directly contradicts the statutory language. *See* Pl. Br. at 18-19. Specifically, the statute provides that Commerce's cost test must be based on the cost of production, which includes both raw material and conversion costs.

*See* 19 U.S.C. § 1677b(b)(1) & (3). Thus, Commerce's interpretation of "period" in § 1677b(b)(3) should not allow it to disregard ***actual*** changes in conversion costs that are not distortive fluctuations.

The Defendant, in passing, suggests that Citribel waived this issue. *See* Def. Br. at 28.  However, Citribel has consistently argued that Commerce's use of annual conversion costs conflicts with its definition of the cost of manufacturing, which includes both raw material and conversion costs. *See* Citribel's Admin. Case Br. at 5-6. A mere reference to the statutory language defining the cost of production does not constitute a waiver of this argument. Moreover, an argument based on statutory interpretation cannot be waived, as the Court must determine the reasonableness of Commerce's interpretation regardless of the level of deference afforded to the agency. *See e.g., Shandong Huarong General Corp. v. United States*, Slip Op. 01-88, Consol. Court No. 00-08-00393, at 7-8 (Ct. Int'l Trade Jul. 23, 2001). The Court must evaluate whether Commerce's interpretation of "period" under 19 U.S.C. § 1677b(b)(3) and its practice to implement that interpretation are reasonable and consistent with the statutory mandate to consider all components of production cost.

### 2.  Citribel did not waive any argument about Commerce's failure to explain its methodology prior to the Final Results

In the Preliminary Results, Commerce stated that it analyzed the ***effect*** of Citribel's conversion cost ***increases*** on the total cost of manufacturing. *See* Prelim Analysis Memo, at 2. Appx1021. This statement was directly contradicted by Commerce's use of annual conversion costs in its cost analysis. Citribel addressed this point in its administrative case brief:

> Commerce claimed that it analyzed the effect of these cost changes, but failed to do so by examining Citribel's annualized conversion costs instead of its quarterly conversion costs.

*See* Citribel's Admin. Case. Br. at 2. Appx4227. However, Commerce has failed to explain this contradiction to date. Moreover, in the Preliminary Results, Commerce provided no rationale or discussion of record evidence to justify its use of annual conversion costs. Commerce's contradictory statements, combined with its complete lack of explanation supporting its decision to use annual conversion costs, deprived Citribel of a meaningful opportunity to participate in the administrative proceeding.

The Defendant argues that Citribel waived this issue because its administrative case brief refers to prior cases in which Commerce used annual conversion costs. *See* Def. Br. at 31-32. However, such "precedents" cannot substitute for Commerce's obligation to provide case-specific explanations and discussions of record evidence. Commerce not only failed to offer its rationale as

17

applied to the underlying case but also failed to support it with case-specific evidence on the record. Accordingly, Citribel did not waive any argument regarding due process.

### 3. Citribel did not exhaust administrative remedies regarding any argument for departure from established practice

The Defendant-Intervenors argue that Citribel failed to exhaust its administrative remedies with respect to any argument for a "change in practice." *See* Intvrs. Br. at 9-10. The Defendant-Intervenors point to *Polyester Textured Yarn From Thailand*, 86 Fed. Reg. 58,883 (October 25, 2021), a case setting forth the explanation for the Department's "policy" to use annual conversion costs. *Id.* The Defendant-Intervenors claim that Citribel ignored this case and "acted as if Commerce's established practice were different." *Id.* at 10. This is an inaccurate description of the facts.

In the Preliminary Results, Commerce claimed to have analyzed the effect of Citribel's conversion cost increases on its total COM. *See* Prelim Analysis Memo, at 2. Appx1021. However, the "policy" set forth in *Polyester Textured Yarn* does not provide a method to analyze such an effect.[13] Furthermore, Commerce did not confirm until the Final Results that it had applied the policy. As a result, Citribel

---

[13] The "policy" is to use annual conversion costs which do not reflect any change.

did not fail to exhaust its administrative remedies regarding any argument about Commerce's application of the policy.

Lastly, the Defendant-Intervenors incorrectly allege that Citribel argued for "a change in practice," as though it had requested a change in Commerce's policy. However, Citribel's demonstration of the flaws in Commerce's methodology does not constitute such a request. As clearly stated in its case brief, Citribel challenged Commerce's "cookie-cutter" use of its methodology, not the methodology itself. *See* Pl. Br. at 15.

Commerce's methodology relies on generalizations about how conversion costs are incurred and accounted for. Citribel argued that these generalizations do not reflect Citribel's actual cost experience during the POR and that an adjustment to the standard methodology is warranted. Commerce failed to properly evaluate this argument. Accordingly, Citribel did not fail to exhaust its administrative remedies with respect to this issue.

## <u>CONCLUSION</u>

For the reasons discussed in this brief, Plaintiff respectfully urges this Court to reject the arguments of the Defendant and the Defendant-Intervenors in their response briefs.

Respectfully submitted,

*/s/ Pierce J. Lee*
Daniel J. Cannistra
Pierce J. Lee

Crowell & Moring
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel: (202) 508-8780
Email: plee@crowell.com

*Counsel for Plaintiff Citribel N.V*

December 6, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 3,971 words, including text, footnotes, headings, and exhibits and excluding the table of contents, table of authorities, and counsel's signature block.

*/s/ Pierce J. Lee*
Pierce J. Lee
