UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| CITRIBEL NV,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>　and<br><br>ARCHER DANIELS MIDLAND COMPANY, CARGILL, INCORPORATED, AND PRIMARY PRODUCTS INGREDIENTS AMERICAS LLC<br><br>　　　　　Defendant-Intervenors. | )<br>)<br>)<br>)<br>)<br>)<br>) Consol. Court No. 24-00010<br>)<br>) PUBLIC DOCUMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL BRIEF OF DEFENDANT-INTERVENORS ARCHER DANIELS MIDLAND COMPANY, CARGILL, INCORPORATED, AND PRIMARY PRODUCTS INGREDIENTS AMERICAS LLC

　　　　　　　　　　　　　　　　　　Stephen P. Vaughn
　　　　　　　　　　　　　　　　　　Daniel L. Schneiderman
　　　　　　　　　　　　　　　　　　KING & SPALDING LLP
　　　　　　　　　　　　　　　　　　1700 Pennsylvania Avenue, NW
　　　　　　　　　　　　　　　　　　Washington, DC  20006
　　　　　　　　　　　　　　　　　　(202) 737-0500

　　　　　　　　　　　　　　　　　　*Counsel For Archer Daniels Midland Company, Cargill, Incorporated, and Primary Products Ingredients Americas LLC*

June 10, 2025

# TABLE OF CONTENTS

SUPPLEMENTAL BRIEF ........................................................................ 1

CONCLUSION ....................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bio-Lab, Inc. v. United States*,
  49 CIT __, Slip Op. 2025-39 (April 14, 2025) .......................................... 1

*BYD (H.K.) Co. v. United States*,
  49 CIT __, Slip Op. 2025-60 (May 16, 2025) ........................................ 2-4

*Habas Sinai v. United States*,
  43 CIT __, 361 F.Supp.3d 1314 (2019) .......................................... 3, 4, 7

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ................................................................. 1-4

*Smith-Corona Group v. United States*,
  713 F.2d 1568 (Fed. Cir. 1983) ..................................................... 2

*Torrington Co. v. United States*,
  68 F.3d 1347 (Fed. Cir. 1995) ...................................................... 2

**Statutes**

5 U.S.C. § 551 ............................................................................ 1

19 U.S.C. § 1516a ....................................................................... 1

19 U.S.C. § 1677(1) ..................................................................... 2

19 U.S.C. § 1677b(b)(3)(A) ............................................................ 3

19 U.S.C. § 2504(b) ..................................................................... 2

19 U.S.C. § 3513 ......................................................................... 2

28 U.S.C. § 2637(d) ................................................................. 5, 9

# GLOSSARY

| | |
|---|---|
| COM | Cost of Manufacture |
| DIRMAT | Direct Materials Cost (a component of Cost of Manufacture) |
| VOH | Variable Overhead Cost (a component of Cost of Manufacture) |

# SUPPLEMENTAL BRIEF

Defendant-Intervenors Archer Daniels Midland Company, Cargill, Incorporated, and Primary Products Ingredients Americas LLC provide this supplemental brief in response to the Court's May 20, 2025 order (ECF No. 55) directing the parties to address the following two issues.

1. To what extent the Supreme Court's discussion of statutory *stare decisis* in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), bears on caselaw referenced in the parties' prior briefing; and

In our October 31, 2024 response brief, Defendant-Intervenors argued that *Loper Bright* is inapplicable to cases like this one arising under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a, rather than under the Administrative Procedures Act, 5 U.S.C. § 551 *et seq. Def.-Int. Response Br.* at 6 (ECF No. 36). Although Defendant-Intervenors preserve that argument, we recognize that this Court has subsequently found to the contrary. *See Bio-Lab, Inc. v. United States*, 49 CIT __, __, Slip Op. 2025-39 (April 14, 2025) at n.5.

Nevertheless, just last month, this Court explained that *Loper Bright* does not require courts to "throw out the administrative discretion baby with the *Chevron* deference bathwater," because it "will sometimes be the case that the best reading of a statute is that it

delegates discretionary authority to an agency." *BYD (H.K.) Co. v. United States*, 49 CIT __, __, Slip Op. 2025-60 (May 16, 2025) at 29 (internal citations omitted). According to the Court, "assuming the statute provides constitutionally delegable authority and that the agency has stayed within its lane," the court's role is to ensure that the agency's "action is both reasonable and reasonably explained." *Id.* at 30 (internal citations omitted). In *BYD*, the Court found that "the statute delegates authority to Commerce to define the general term 'value' in 19 U.S.C. § 1677j(b)(1)(D)." *Id.*

As previously discussed in Defendant-Intervenor's response brief, Congress specifically delegated authority to Commerce to interpret and apply the antidumping laws. Under 19 U.S.C. § 1677(1), Commerce "has been entrusted with responsibility for implementing the antidumping law." *Smith-Corona Group v. United States*, 713 F.2d 1568, 1571 (Fed. Cir. 1983). And Congress delegated rulemaking authority to Commerce to implement the relevant trade agreements. *See* 19 U.S.C. §§ 2504(b) and 3513. Commerce, therefore, remains "master of the antidumping laws," *see Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995), notwithstanding *Loper Bright*. As

2

in *BYD*, therefore, the Court should find here that the statute delegates authority to Commerce to define the "period" for which costs of production are to be calculated pursuant to 19 U.S.C. § 1677b(b)(3)(A).

With that preface, the Court's question relates specifically to how the Supreme Court's discussion of statutory *stare decisis* bears on caselaw referenced in the parties' prior briefing. *Loper Bright* explains that it "does not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful—including the Clean Air Act holding of *Chevron* itself—are still subject to statutory *stare decisis* despite the Court's change in interpretive methodology." *Loper Bright*, 603 U.S. 369, 412 (2024).

Here, this Court already has affirmed Commerce's practice of using annual conversion costs (even when applying quarterly direct material costs) as a reasonable interpretation of 19 U.S.C. § 1677b(b)(3)(A). *Habas Sinai v. United States*, 43 CIT __, __, 361 F.Supp.3d 1314, 1324-25 (2019). In that case, plaintiff Habas "argued that Commerce's addition of a POI-average transformation cost (consisting of labor and overhead) to quarterly DIRMAT costs 'smooths out any quarterly fluctuations' and biases the test against using

3

quarterly costs." *Id.* But this Court held that "the absence of a statutory definition of the period or methodology to be used when calculating the cost of production for the sales below cost test provides Commerce with broad discretion in this regard." *Id.*, 361 F.Supp.3d at 1327. "The fact that Plaintiffs' alternative methodology would have achieved a different result is insufficient to suggest that Commerce's methodology, consistently applied for at least a decade and rooted in International Financial Reporting Standards, is unreasonable." *Id.* The same Commerce practice being challenged in this case, therefore, was upheld in *Habas* as a reasonable interpretation of the statute.

    Plaintiff contends that "the precedential value of *Habas* should be revisited in light of Supreme Court's recent reversal of *Chevron* in *Loper Bright*." Pl. Br. (ECF No. 28-2) at 20. It should not, because statutory *stare decisis* is unaffected. As the Supreme Court made clear, "mere reliance on *Chevron* … is not enough to justify overruling a statutory precedent." *Loper Bright*, 603 U.S. at 412. This Court, therefore, should continue to follow the precedent set by *Habas* which, like *BYD*, appropriately deferred to Commerce's reasonable construction of the statute.

4

2. Whether the Department of Commerce's policy of normalizing conversion costs when computing the cost of production under 19 U.S.C. § 1677b(b)(3) is reasonable (i) generally; and (ii) as applied in the determination challenged here. In addressing this question, the parties shall discuss whether Plaintiff exhausted its administrative remedies with respect to any argument against the reasonableness of the policy generally. *See* 28 U.S.C. § 2637(d).

Commerce's policy of normalizing conversion costs over a full annual period is reasonable generally. As Commerce explained, such costs often are incurred sporadically over an entire year. Appx1287-1288, citing *Yarn from Thailand*. For example, repair and maintenance costs may be recorded at irregular intervals during the year, such as when production equipment is down. Fixed costs, such as depreciation and (to a large extent) labor, also can vary erratically on a per-unit basis when the quarterly production volumes to which they are allocated are volatile. For example, even when total fixed costs are constant, per-unit fixed overhead costs during one quarter may increase dramatically due to reduced production volumes in that quarter. If Commerce were to use quarterly (rather than annual) conversion costs, distortions could arise because cost differences could be attributable to

5

these other factors.  Thus, Commerce's practice of normalizing conversion costs using annual averages is reasonable.

On appeal, Plaintiff argues that this explanation makes no sense as applied here, at least with respect to electricity and natural gas.  *Pl. Reply Br.* (ECF No. 37) at 7-9.  According to Plaintiff, such energy costs are directly tied to citric acid production, and thus there is no reasoned basis to treat them differently than direct materials, such as molasses.  *Id.* at 5-9.  The implication is that – even if Commerce normalizes other conversion costs – at the very least Commerce should have used both quarterly DIRMAT *and quarterly energy costs* when evaluating whether the 25% quarterly cost test had been met.  That argument, however, was never presented for Commerce's consideration, Appx4220-4245, and Citribel failed to build the requisite evidentiary record even to preserve such an argument.  In its cost response, Citribel included energy costs as just one component of VOH, along with "maintenance costs, subcontracting costs, and other factory costs."  Appx4787.  But Citribel never disaggregated the energy component of VOH in the cost database nor demonstrated that the 25% quarterly cost test would have

6

been satisfied by the limited addition of that quarterly component. Appx4241-4245.

Rather than making a nuanced argument for "fine-tuning" Commerce's established practice when applying the 25% quarterly cost test, before the agency Citribel contended that Commerce may not normalize *any* conversion costs. Appx4231-4235. This argument was not based on a purported general unreasonableness of Commerce's established practice, but rather was premised on Citribel's misunderstanding of Commerce's established practice and misreading of this Court's holding in *Habas*. Appx4233-4234. *See also See Def-Int. Response Br.* (ECF No. 36) at 9. In other words, before the agency, Citribel did not argue that Commerce's existing practice is unreasonable and should be changed; Citribel simply misdescribed the existing practice. Citribel failed, therefore, to exhaust its administrative remedies with respect to any argument against the reasonableness of the policy generally.

Citribel did argue in its agency case brief that high inflation impacts conversion costs, not just direct material costs. In particular, Citribel argued that, in addition to energy, "labor, service and

7

consumables are all conversion costs that are impacted by inflation," and that "inflation also decreases production level which increases fixed overheads." Appx4232. Thus, "to analyze the effect of these factors, Commerce must examine Citribel's quarterly conversion costs." *Id.* As Commerce found, however, this argument effectively invoked a separate "high-inflation methodology (which adjusts for increase in prices and all cost components)" that is different "from the quarterly cost methodology (which adjusts only for changes in the cost of key raw material inputs)." Appx1288. Plaintiff no longer contends that the alternative high-inflation methodology was warranted or should be applied here. *See Def-Int. Response Br.* (ECF No. 36) at 11.

Plaintiff thus failed to exhaust its administrative remedies in multiple respects. Citribel presented no coherent argument that, in the context of the quarterly cost methodology, Commerce's established practice of normalizing all conversion costs was generally unreasonable or should be changed. And Citribel made no argument for modifying the established practice as applied here so as to normalize only *some* conversion costs, while accepting other conversion costs (*i.e.*, energy) on a quarterly basis. Consequently, Commerce was deprived of an

8

opportunity to consider these arguments and determine whether it might have been appropriate to change its practice. This Court should not entertain new arguments presented by Plaintiff for the first time on appeal. *See* 28 U.S.C. § 2637(d) and citations in *Def-Int. Response Br.* (ECF No. 36) at n.2.

## CONCLUSION

For the reasons set forth above and in Defendant-Intervenor's October 31, 2024 response brief, Plaintiff's claims should be denied, and Commerce's final results should be affirmed.

        Respectfully submitted,

        */s/ Daniel Schneiderman*
        Stephen P. Vaughn
        Daniel L. Schneiderman

        KING & SPALDING LLP
        1700 Pennsylvania Avenue, NW
        Washington, DC 20006
        (202) 737-0500

        *Counsel for Defendant-Intervenors*

June 10, 2025

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations. Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>1,591</u> words. In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

<u>*/s/ Daniel Schneiderman*</u><br>
Daniel L. Schneiderman<br><br>
KING & SPALDING LLP<br>
1700 Pennsylvania Avenue, NW<br>
Washington, DC 20006<br>
(202) 737-0500<br><br>
*Counsel for Defendant-Intervenors*

June 10, 2025