UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE M. MILLER BAKER, JUDGE

CITRIBEL NV,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

ARCHER DANIELS MIDLAND COMPANY, CARGILL, INCORPORATED, AND PRIMARY PRODUCTS INGREDIENTS AMERICAS LLC

Defendant-Intervenors.

Court No. 24-00010

**PUBLIC DOCUMENT**

# DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF REMAND REDETERMINATION

Stephen P. Vaughn
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

September 15, 2026

*Counsel for Defendant-Intervenors*

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT .......... 1

ARGUMENT .......... 2

I. THE REMAND REDETERMINATION COMPLIES WITH THE REMAND ORDER, IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS IN ACCORDANCE WITH LAW .......... 2

CONCLUSION .......... 8

# TABLE OF AUTHORITIES

## Cases

*Citribel N.V. v. United States*, No. 24-00010, slip op. 25-110 (Ct. Int'l Trade Aug. 22, 2025) ........................................................ 3, 4

*Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 361 F. Supp. 3d 1314 (Ct. Int'l Trade 2019) ........................................ 4

## GLOSSARY

| | |
|---|---|
| FOH | Fixed Overhead |
| VOH | Variable Overhead |

**DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant-Intervenors Archer Daniels Midland Company, Cargill, Incorporated, and Primary Products Ingredients Americas LLC submit these comments in support of the Final Results of Redetermination Pursuant to Court Remand issued by the U.S. Department of Commerce ("Commerce") on February 3, 2026 ("Remand Redetermination"). Appx1000-1045. Defendant-Intervenors agree with Defendant's Corrected Response to Comments on Remand Redetermination, filed August 28, 2026 (ECF Nos. 88, 89) ("Def. Cmts."). To minimize repetition, Defendant-Intervenors incorporate by reference the background and the entirety of the Government's argument. For the reasons set forth in the Government's comments, and as further demonstrated below, Plaintiff Citribel N.V.'s ("Citribel") arguments lack merit, and the Remand Redetermination should be sustained.

## SUMMARY OF THE ARGUMENT

The Remand Redetermination complies with the Court's order, is supported by substantial evidence, and is in accordance with law. Plaintiff points to no evidence demonstrating that annualized non-

energy conversion costs are distortive, and the burden to present such evidence rested with Plaintiff. The fact that fixed overhead costs are higher, on a per unit basis, when production volumes are lower is not evidence that annualization of such fixed overhead costs is "distortive." Commerce's longstanding practice of annualizing conversion costs is designed to smooth out these volume-driven fluctuations and more accurately capture actual per-unit production costs across the period of review. Plaintiff has failed to demonstrate why Commerce should abandon that practice here. The Remand Redetermination, therefore, should be sustained.

## ARGUMENT

### I. THE REMAND REDETERMINATION COMPLIES WITH THE REMAND ORDER, IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS IN ACCORDANCE WITH LAW

In its initial opinion, this Court found that, notwithstanding "Commerce's practice of always annualizing conversion costs," Citribel pointed to record evidence showing that approach may be "distortive because of the extraordinary rise in at least certain conversion costs (e.g., natural gas and electricity)," and Commerce may not "dismiss{} that contention without any analysis or discussion of the company's

evidence." *Citribel N.V. v. United States*, No. 24-00010, Slip Op. 25-110 (Ct. Int'l Trade Aug. 22, 2025) ("*Remand Order*") at *15. The Court ordered Commerce to "consider Citribel's various conversion expenses and determine whether, as the company says, annualization of some or all of them produces distorted results." *Id.*

On remand, Commerce "re-evaluated and determined it appropriate to consider the natural gas and electricity costs as part of the material inputs," and thus it used quarterly costs for the "VOH – Energy cost component" of Citribel's conversion costs. Appx1016. Commerce also explained in detail why it continued to be appropriate to annualize Citribel's other conversion cost components. Appx1016-1022. In so doing, Commerce fully complied with the *Remand Order*.

In its comments, Plaintiff points to no evidence showing why it is distortive to use annualized non-energy conversion costs. Plaintiff's Comments in Opposition to Final Results of Redetermination, filed May 26, 2026 (ECF No. 79) ("Pl. Cmts."). Instead, Plaintiff complains that it should not be faulted for any failure to present such evidence, because Plaintiff could not anticipate Commerce might evaluate conversion costs on a component-specific basis. *Id.* at 19. It was, however, Plaintiff's

burden to present evidence of distortion sufficient to justify a departure from Commerce's established practice of annualizing all conversion costs. *See Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*, 361 F. Supp. 3d 1314, 1327 (Ct. Int'l Trade 2019). As the Court explained, Plaintiff satisfied that burden with respect to the energy component of conversion costs, *Remand Order* at *15, and there is no reason why Plaintiff could not have presented similar evidence during the underlying review with respect to other components. Although it now seeks a second remand so that the record can be reopened for the submission of such evidence, Pl. Cmts. at 20-23, Plaintiff points to no reversible error in Commerce's decision not to reopen the record. Appx1040-1043.

Plaintiff contends that Commerce failed to examine evidence regarding the impact of changing production volumes on overall per-unit conversion costs. Pl. Cmts. at 7, 23-25. According to Plaintiff, Citribel's production volume declined in the latter part of the review period, resulting in higher per-unit conversion costs. *Id.* at 24. Plaintiff does not explain, however, why it is "distortive" to annualize such costs and smooth out such fluctuations rather than to use quarterly costs

reflecting high conversion costs during periods of low production volume and low conversion costs during periods of high production volume. As Commerce explained in the Remand Redetermination,

> The unassailable mathematical fact that per unit costs will increase, even where fixed, when output declines does not reflect sufficient evidence in itself, to compel Commerce to disregard the presumption that the conversion costs, categorically, are generally incurred erratically throughout the period of review. Decline in production output, on its own and without any further context regarding the underlying reason for any decline, offers no probative value to resolve the central issue of distortion remanded by the Court. Indeed, where production output fluctuates in a subset of the period such that it reflects an outlier compared to the stability exhibited in the remainder of the period, and costs remain stable, this is precisely the scenario which conceptually supports the presumption that period-wide averaging is necessary to avoid distortions caused by ordinary fluctuation. As previously noted, the presumption identifies that, for example, repair and maintenance costs may be recorded at irregular intervals during the year, such as when production equipment is down and fixed costs, such as depreciation and (to a large extent) labor, also can vary erratically on a per-unit basis when the quarterly production volumes to which they are allocated change. In other words, it is illogical to expect that per unit conversion costs do not change, i.e., fluctuate, over the course of a period of review.

Appx1037. Commerce carefully evaluated Citribel's production volumes during the period of review and saw no reason to depart from the

normal practice of annualizing per unit conversion costs that fluctuated based on such volumes. Appx1037-Appx1039.

The Remand Redetermination also points out that Citribel "cites no evidence of labor issues, unexpected maintenance, canceled contracts, etc. which purport to establish abnormal circumstances and link them to a decrease in output." Appx1038. But even if Citribel had provided such evidence, it is unclear why it would justify a quarterly cost approach. To illustrate with an extreme example, suppose a company produces one widget per day and has fixed annual depreciation costs (reported in the FOH variable) of $365, resulting in an FOH expense of $1/widget under normal conditions. Suppose further that, due to an unforeseeable natural disaster, the company's machinery becomes unusable for 91 of the 92 days in the fourth quarter, such that only a single widget was produced in that quarter. Under Commerce's approach, the $365 of annual depreciation would be allocated to the 274 widgets produced during the entire year, resulting in FOH costs of $1.33 per widget. Under Citribel's proposed approach, by contrast, the single widget produced in the fourth quarter would be

assigned an FOH cost of $92, and each widget produced in the first three quarters would continue to be assigned an FOH cost of $1.

In this example, Citribel's proposed approach would be distortive, because the true economic cost of producing each widget remains approximately the same regardless of when it was produced. It did not actually cost 92 times more to make a widget on October 1 than on September 30. The depreciation expense reflects the cost of the same machinery allocated over the course of the year; there was no sudden increase in the cost of production during the fourth quarter. Assigning $92 in overhead to a single widget simply because production was temporarily halted does not reflect any meaningful change in the underlying cost structure; it is merely the mathematical artifact of dividing fixed costs by an abnormally small output figure during an arbitrarily defined sub-period. Critically, this distortion would infect the dumping analysis: the sale of that single widget – which is not inherently more valuable or costly to produce than any other – would almost certainly be made at a price well below the artificially inflated cost. Commerce's annualized approach avoids this result by smoothing out volume-driven fluctuations and more accurately capturing the

actual per-unit cost of production across the entire period of review. Citribel has failed to demonstrate why the agency was required to abandon its established practice here.

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court sustain the Remand Redetermination and enter judgment for Defendant and Defendant-Intervenors.

Respectfully submitted,

*/s/ Daniel Schneiderman*
Stephen P. Vaughn
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

*Counsel for Defendant-Intervenors*

September 15, 2026

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with applicable word count limitations. Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes 1,404 words. In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

*/s/ Daniel Schneiderman*
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

*Counsel for Defendant-Intervenors*

September 15, 2026

## CERTIFICATE REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to requirement 6 of Judge Baker's Document Formatting Instructions, the undersigned certifies that this filing was not prepared with the assistance of a generative artificial intelligence program.

*/s/ Daniel Schneiderman*
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 737-0500

*Counsel for Defendant-Intervenors*

September 15, 2026